## THE PROPRIETORS OF KENNEBECK PURCHASE *versus* OBADIAH CALL.

The printed book of the printers to the General Court is not evidence of private acts, as it is of public statutes. An agent, who has an appointment in writing must produce it, and cannot testify as to its contents, unless it is lost or destroyed. In trespass *qu. clau. freg.,* if the defendant sets up in defence adverse possession, to prevent the plaintiff from recovering damages, he must prove a continued, open, visible, actual possession, or his defence will not avail.

THIS was an action of trespass *quare clausum fregit,* in which it was alleged, that on the first day of January, 1794, and on divers days and times between that day and the day of the purchase of the writ, (Nov. 11, 1799,) the defendant broke and entered the close of the plaintiffs, (describing and bounding a tract of land two miles in length and one and a half in breadth,) and cut and carried away their trees thereon, standing and growing, &c.

The defendant pleaded not guilty.

*Bridge,* for the plaintiffs, began, by stating that by a resolve of the legislature of the 12th of June, 1789, a certain deed of release and confirmation made to the proprietors of the *Kennebeck* purchase or *Plymouth* claim, by a committee of the legislature theretofore

appointed, was established; by which deed the title of the plaintiffs to a large tract of land, including the *locus in quo*, was confirmed by the commonwealth.

SEDGWICK, J. You must show an exemplification of the resolve, if required; and you must also show the original deed of release. The Court do not take notice of private acts, nor is the printed book of the printers to the General Court evidence of such acts, as it is of public acts. SEWALL, J. This release creates no seisin; but you may show a possession in the proprietors independent of the release.

* The proprietors' book of records was then produced, [ * 484 ] by which it appeared, that at a meeting of the proprietors in January, 1764, a standing committee was appointed to employ a surveyor to lay out any of their lands, from time to time, as such committee should think proper; and *J. J.* was called as a witness, to prove that he was employed as a surveyor for that purpose, by the committee. He, being sworn, was asked if he was so employed by the committee, and, answering in the affirmative, was asked whether his appointment was or was not in writing. He said that he had an authority in writing from the committee, but could not say whether it was lost or not.

SEDGWICK, J. The writing must be produced, (being the best evidence,) unless it is proved to be lost or destroyed.

*Bridge* now offered to show grants made by the proprietors of land in the vicinity of the *locus in quo* as evidence of their possession.

This was objected to by *Parker* for the defendant: as this is a possessory action, they must show actual possession.

SEWALL, J. Legal seisin carries with it the possession, unless there be adverse possession.

The plaintiffs then proved several grants made by them, in the year 1764 and since: they *now* produced the written appointment of the surveyor, in 1771, who testified, that he surveyed divers parcels of land for them, within the limits of their claim. They then showed the original indenture of the 27th of October, 1661, made by and between the General Court, for the jurisdiction of *Plymouth*, in New England, on the one part, and *Thomas Winslow*, and others, on the other part, granting to the *Plymouth* company, the tract of land claimed by the plaintiffs; which was recorded in the county of *York*, in 1719, the lands being within the limits of the *then* county of *York*: they next proved a * regular meeting of the proprietors in 1749, under a [ * 485 ] warrant from a justice of the peace for that purpose; and then proved the entry of the defendant into the *locus in quo*

and the cutting and carrying away the trees, as alleged in the declaration.

The Court (*Sedgwick, Sewall,* and *Thacher,* justices) ruled unanimously, that the plaintiffs had now gone far enough in proof of the trespass. The plea admits the existence of the proprietors as named in the writ. If the defendant meant to object to that fact, he should have taken the objection by a plea in abatement.

The defendant relied upon his possession, and proved that in December, 1792, he surveyed part of the land described in the declaration, by running out the lines and marking the trees. The tract so run out by him, was testified to be about 340 rods in length, and 196 rods in breadth; that he afterwards built a barn on it, and in 1794 made a fence round it. But upon the cross examination of his witnesses, it appeared that this fence was nothing but what is called a brush fence, and was made by four men in two days, and that the barn was a mere shed, for the purpose of putting his oxen under cover, during the winters at the times when he was cutting and conveying away the timber from the land. Nor did the defendant produce or offer any evidence that he claimed under a deed or grant from any person; or that he had any writing whatsoever, as evidence of a right to enter. And it further appeared in evidence, that his possession was not a continued one, but only during several successive winters, and until he had stripped the land of the most valuable timber, when he had abandoned it entirely.

*Lee* and *Parker,* for the defendant, contended that the entry and possession of the defendant, which had been proved in this case, were an ousting of the proprietors, the plaintiffs. And [ * 486 ] that as * trespass is a possessory action, grounded on a supposed injury to the actual possession, the plaintiffs could not maintain this action, until entry, and actual possession, or by previously bringing ejectment and recovering, after which they might, perhaps, have had an action of trespass for the *mesne* profits. [SEWALL, J. The counsel forget to state the exception to the rule, which is, that where the act complained of is the actual ouster, an entry is not necessary, to enable the plaintiff to maintain trespass.] *Parker.* Admitting it to be true, yet the plaintiffs in this case can recover damages for only the first act, the disseisin itself, but nothing for what is laid under the *continuando.* [SEDGWICK, J. The question is, whether there was a disseisin or not. If there has been a disseisin, then the question is, whether the plaintiffs can recover any thing more than nominal damages, in the present action.]

*P. Mellen,* for the plaintiffs, contended that there had been no

disseisin, and therefore an actual entry by the plaintiffs was not necessary to enable them to recover damages for the whole time laid in the declaration. Here had been no *continued*, visible, open occupation and possession by the defendant. It is evident that the defendant did not enter for the purposes of cultivation and improvement; his object was depredation—the destruction of the timber. He did not enclose the land ; the fence, as it has been called, could answer no object of cultivation, but was a mere temporary thing ; a mark, to designate to others, who were in the practice of the same species of iniquity, that they were here anticipated. The barn which he erected was also intended and used for a cover for his cattle during the winter while he was stripping the land of the timber. Every circumstance proves clearly that his entry was for mischief, and that his claim of right to the land was a mere pretence. * When he had destroyed or carried off [ * 487 ] the valuable timber, he abandoned the possession entirely —a possession which was never *continued* from the entry to the abandonment, for he was not on the land at any time but in the winter season. An entry of the plaintiffs could not be necessary. In *England*, there may be some reason for the rule which has been mentioned ; lands *there* are generally under cultivation ; and there is a visible possession. *Here,* in this particular case, it would have been idle and ridiculous to enter upon land in the wilderness to regain possession, where there was no person in the visible, open possession

*Parker.* There cannot be two rules upon the subject, one for land in a state of cultivation, and another for land in its natural state ; it would be absurd.

*Mellen.* On the abandonment, the possession reverted ; and upon the principles of law, as well as by the dictates of common sense, the possession would follow the seisin, which was in the plaintiffs. It is true that, during the adverse possession, the plaintiffs could not maintain this action so as to recover damages for any thing but the first trespass ; but it is admitted that had they made an actual entry previous to commencing the action, they would have been entitled to recover for the whole. An entry is requisite, where there is actual adverse possession, that the owner may revest himself in the possession of the land ; but where there is no such adverse possession, where no one is in the open possession, an entry is an idle formality, nor can there be any reason for making one.

The Court (*Sedgwick, Sewall,* and *Thacher,* justices) took time to consider, and the next day they said that they were clearly and unanimously of opinion that the defence, relied on, in this case, could not avail. That the possession which would defeat the

[ * 488 ] plaintiff's claim, for damages for the * whole trespass charged, must have been a continued possession, an actual occupation to the exclusion of the rightful owner ; that there could not be two adverse seisins at the same time ; that although the plaintiffs in this case might perhaps have elected to consider themselves as disseised, yet the facts did not necessarily amount to a disseisin. And they further said that to extend the principles relative to adverse possession beyond the case of an actual, open, visible, and consequently exclusive possession, would be of the most dangerous consequence in this country, and would be, in effect, authorizing trespasses of this kind by law.